## COMMONWEALTH *vs*. RICHARD A. FICKETT.

Hampden. May 2, 1988. — August 10, 1988.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Robbery. Felony-Murder Rule. Joint Enterprise. Practice, Criminal,* Required finding, Instructions to jury. *Intoxication. Intent.*

On appeal from convictions on indictments charging murder in the first degree and armed robbery, tried to a jury on several theories, including the theory that defendant's accomplice carried the murder weapon, shot the victim, and took his money while the defendant was acting as an accessory or joint venturer, this court held that, where there was no evidence presented during the Commonwealth's case-in-chief to show that the defendant knew his accomplice had a gun with him, the defendant could not properly be found guilty of the felony of joint venture armed robbery or of joint venture felony-murder with armed robbery as the underlying felony; consequently, this court vacated the convictions and remanded the case for retrial on those theories of guilt which were established on the evidence as permissible bases of convictions of those crimes. [196-199]

At the trial of indictments charging murder in the first degree, armed robbery, and assault and battery, it was error requiring reversal for the judge to refuse to instruct the jury on the issue of withdrawal by the defendant from a planned joint venture to rob the victim, where such an instruction was requested by the defendant, and where there was evidence which, if believed, would have raised a reasonable doubt whether the defendant had withdrawn from the enterprise. [200-201]

INDICTMENTS found and returned in the Superior Court Department on January 16, 1981.

The cases were tried before *John F. Murphy, Jr.,* J.

*Wendy Sibbison* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. About 6 P.M., on December 27, 1980, a police officer found the body of John Devine lying on the side of a road in Agawam. Devine had recently died from two bullet

wounds to the back of the head. On January 3, 1981, the police arrested the defendant and one David Morales for Devine's murder.

There was evidence that the victim had been shot by a handgun owned by Morales. There was also evidence that, on the day of his death, the victim and the defendant had spent several hours drinking at various bars in Hampden County. At the end of their travels, the victim and the defendant went to Morales's property in West Springfield, where Morales lived and also operated a motor vehicle repair service. The circumstances pointed to the possibility that Morales and the defendant acted together to take the victim's money and to kill him. The evidence, however, also permitted the conclusion that Morales or the defendant committed the crimes alone. At trial there was a sharp conflict between the testimony of Morales and the defendant as to how the victim reached Agawam and was killed.

The defendant was indicted and convicted of murder in the first degree, armed robbery, and assault and battery committed in Agawam.[1] Represented by new counsel on appeal, the defendant raises numerous challenges to his convictions, and he further challenges the denial of his motion for a new trial. We conclude that the defendant's convictions cannot stand. Among the theories under which the armed robbery and the murder indictments were given to the jury was that Morales carried the murder weapon, shot the victim, and took his money while the defendant was acting as an accessory or joint venturer. There was no evidence presented during the Commonwealth's case-in-chief to show that the defendant knew Morales had a gun with him. Thus, as we shall explain, the murder and armed robbery convictions must be reversed. In discussing issues that may arise again on retrial, we note another error that would have required reversal of all three convictions in any event.

---

[1] He was found not guilty of committing an assault and battery in West Springfield and of unlawful possession of a firearm and ammunition in Agawam. We are advised that prior to the defendant's trial, Morales was tried for the murder of the victim and found not guilty.

We set forth briefly sufficient facts to provide a background for our discussion of the issues. In the middle of the afternoon of December 27, 1980, a cabdriver picked up the defendant and the victim at a bar in Springfield. In the cabdriver's opinion, they both were intoxicated. They went successively to bars in Agawam, Southwick, and West Springfield. The victim, who was paying for all the drinks, had a substantial sum of money that the defendant wanted. In the course of these travels, the defendant spoke with Morales by telephone and told him the victim was a good target. Morales expressed an interest in joining with the defendant to take the victim's money. The cabdriver left the defendant and the victim at the bar in West Springfield, from which somewhat later they walked to Morales's house.

Morales and the defendant both testified that the other, acting alone, had killed the victim. Morales testified that the defendant stole his gun, loaded the victim into a truck owned by a customer of Morales, and drove off without Morales's permission. The defendant returned about fifteen to twenty minutes later, threw the gun on the table, took out a roll of bills, gave Morales $50, and said he had killed a man. There was other evidence that tended to show the defendant's guilt.

The defendant gave a statement to the police that tended to exonerate himself and to point the finger at Morales. His testimony at trial in large measure followed the same pattern. Although he had initially been interested in stealing the victim's money, he abandoned that project when the victim gave him $100. He told Morales that he had changed his mind. He did, however, go to Morales's property with the victim. There, according to the defendant, he told Morales that he did not want to have anything to do with robbing the victim. Morales agreed to drive the defendant home or to a bar. All three entered the truck with Morales driving. In Agawam Morales got out, pulled the victim from the truck, beat him, shot him twice, and took his money. He gave the defendant $50.

1. One theory on which the judge submitted the indictments of murder and of armed robbery to the jury was that the defendant participated in a joint venture during which Morales carried

and used the gun. It was essential to the proof of this theory of guilt that the Commonwealth establish beyond a reasonable doubt that the defendant knew Morales had a gun with him. "Our cases concerning accessorial responsibility for the possession of a weapon by another have involved circumstances in which the person not in possession of the weapon knew that the other person had a weapon." *Commonwealth* v. *Watson,* 388 Mass. 536, 544 (1983), *S.C.,* 393 Mass. 297 (1984). Thus, the defendant could not properly be found guilty of the felony of joint venture armed robbery or of joint venture felony-murder with armed robbery as the underlying felony unless, at the close of the Commonwealth's case, the evidence warranted a finding beyond a reasonable doubt that the defendant knew that Morales had a gun. See *Commonwealth* v. *Grant,* 391 Mass. 645, 648-649 (1984); *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979).

The Commonwealth does not argue that the defendant has not properly raised this issue for appellate review. At the close of the Commonwealth's case, the defendant filed a generalized motion for a required finding of not guilty on all charges. He did not specifically argue that he was entitled to a required finding on so much of the indictments as charged him with joint venture armed robbery or murder based on the theory of joint venture felony-murder (based on armed robbery). Certainly the defendant was not entitled in all respects to required findings of not guilty on the indictments charging armed robbery and murder because there was evidence that would have warranted guilty verdicts on these indictments on other theories. Even if the defendant did not preserve his rights in the most complete manner, the point was adequately preserved so that, quite apart from our duty under G. L. c. 278, § 33E (1986 ed.), we have before us the issue whether the evidence was sufficient to warrant verdicts on the murder and armed robbery indictments in each of the joint venture theories on which the case went to the jury. If, as we conclude, there was insufficient evidence to justify submission of the case to the jury on any of these theories, there must be a new trial because we do not know the theory or theories on which the jury reached their verdicts of guilty on these indictments.

The Commonwealth's brief does not respond to the defendant's contention in his brief that no evidence permitted a finding that the defendant knew Morales was armed when they left Morales's garage with the victim. The Commonwealth points to evidence warranting a finding of deliberate premeditated murder with the defendant being the shooter, and to evidence of unarmed robbery and thus of a felony-murder based on unarmed robbery. Because of this evidence the motions for required findings of not guilty on the relevant charges could not properly have been allowed in full. But we have found no evidence that would have warranted a finding that the defendant knew that Morales had a gun with him on the fatal trip. The convictions for murder and armed robbery, therefore, must be vacated, and the case remanded for retrial on those theories of guilt which were established on the evidence as permissible bases of convictions of those crimes.[2]

We add that there was no evidence that would have warranted a finding beyond a reasonable doubt that the defendant shared with Morales a state of mind that would have justified a finding of his guilt of murder on the theory of joint venture premeditated murder. Such evidence is required to prove joint venture premeditated murder. See *Commonwealth* v. *Mandile, ante* 93, 102 (1988).[3] On an alternative theory, there was evidence that

---

[2] After the close of the Commonwealth's case, the defendant testified that he knew Morales owned a gun and kept it variously in his house, in his car, or on his person. Even if that generalized knowledge would be enough (with other evidence) to warrant an inference beyond a reasonable doubt that the defendant knew Morales was carrying a gun that night (see *Commonwealth* v. *Clary,* 388 Mass. 583, 588-589 [1983]), the evidence came too late to be considered on the defendant's motion for required findings of not guilty (see *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 [1976]).

[3] As to murder in the second degree based on joint venture but not involving felony-murder, the evidence must establish that the accessory either intended that the victim be killed or knew that there was a substantial likelihood or chance that the victim would be killed. See *Commonwealth* v. *Scanlon,* 373 Mass. 11, 17-18 (1977). The defendant was not convicted on this theory, and the issue whether the evidence was adequate to warrant such a verdict is not before us and has not been argued. Whether the evidence was sufficient to support this theory may be important in determining whether the defendant properly may be retried for murder in the second degree on the theory of joint venture, not based on joint venture felony-murder.

would have warranted a finding that the defendant himself killed the victim with deliberate premeditation. However, because the evidence did not warrant a conviction on joint venture premeditated murder, the defendant's motion for a required finding on the indictment for murder should have been allowed to that extent.

The defendant now may be retried for murder in the first degree only on the theory that he fired the fatal shots (subject to a possible problem discussed below) and on the theory of joint venture felony-murder with unarmed robbery as the underlying felony.[4] In the latter instance, the Commonwealth would have to establish that the manner of execution of the unarmed robbery demonstrated the defendant's conscious disregard of the risk to human life. See *Commonwealth* v. *Moran,* 387 Mass. 644, 651 (1982). As to the former theory, the evidence would have warranted a guilty verdict on the theory of premeditated murder in the first degree. But the Commonwealth's right to retry the defendant on the theory that he fired the fatal shots may be foreclosed by the jury verdict finding the defendant not guilty of carrying a firearm on his person without authority at Agawam on December 27, 1980 (G. L. c. 269, § 10 [*a*] [1986 ed.]). See *Ashe* v. *Swenson,* 397 U.S. 436, 443-444 (1970); *Commonwealth* v. *Lopez,* 383 Mass. 497, 498-499 (1981). We point to the question. It has not been argued, and we do not decide it.

---

[4] We think it is clear as a matter of common law principle that, if a defendant demonstrates on appeal that the evidence was insufficient to warrant his conviction of a crime on a particular theory, on retrial for the same crime the prosecutor may rely on other theories justifying his conviction that were supported by the evidence at the first trial but may not rely on a theory that should not have been given to the jury at that first trial. The double jeopardy clause of the Fifth Amendment to the Constitution of the United States probably requires the same conclusion. See *Burks* v. *United States,* 437 U.S. 1, 18 (1978); *Wilson* v. *Meyer,* 665 F.2d 118, 124 (7th Cir. 1981), cert. denied, 455 U.S. 993 (1982) ("If [the criminal's] felony murder conviction had been determined on appeal to have been based on insufficient evidence, clearly no reprosecution could have been permitted"); *Huffington* v. *State,* 302 Md. 184, 191 & n.6 (1985), cert. denied, 478 U.S. 1023 (1986). None of these cases involved different theories of felony-murder, one or more supported by the evidence and one or more

2. In considering issues that may arise at any retrial of the defendant, we turn to one which would have required reversal of all the convictions in this case in any event.[5] The defendant requested instructions that he could not be found guilty if he had abandoned or withdrawn from plans to rob the victim. The judge gave no charge on withdrawal or abandonment. The Commonwealth argues that a charge on withdrawal or abandonment of the joint venture was not required on the evidence. We disagree.

There was evidence of a joint venture to assault and rob the victim.[6] There was also evidence which, if believed, would have raised a reasonable doubt whether the defendant had withdrawn from the enterprise. The defendant testified that he had made a number of telephone calls to Morales on the day of the murder from bars where he and the victim had been drinking. During one of these calls, Morales asked him to bring the victim to Morales's home so that they could rob him. The defendant told Morales that he would telephone him later and left the bar with the victim and a cabdriver. On the way out of the bar, the defendant asked the cabdriver to help him rob the victim. Once in the cab, the defendant asked the victim if he could borrow $100, and the victim gave him the money. The cabdriver's testimony confirmed this transaction. After receiving the $100, the defendant told the cabdriver that he no longer wanted the cabdriver to help him rob the victim. The

not so supported, but the principle of these cases seems equally applicable to such a circumstance. The common law principle we express is supported by the reasoning in our opinion in *Berry* v. *Commonwealth,* 393 Mass. 793, 798-799 (1985) (insufficiency of evidence bars retrial following mistrial due to a "hung" jury).

[5] The conviction of assault and battery appears to have been based on the same event as the killing. The Commonwealth does not reply to the defendant's claim that the assault and battery was a lesser included offense and, as such, should not have been the basis of a separate sentence. See *Shabazz* v. *Commonwealth,* 387 Mass. 291, 293-295 (1982). In the interest of justice, we probably would have reversed the assault and battery conviction along with our reversal of the convictions of the more serious crimes, even if the issue we now discuss did not so require.

[6] The judge charged on the joint venture theory as to the assault and battery in the Agawam indictment as well as to the murder and armed robbery indictments.

defendant then called Morales, told him that the victim had just lent him $100, and that he "didn't want nothing to do with what we had discussed." Morales asked the defendant to bring the victim to his place so that they could "talk about it" and the defendant agreed. Later, at Morales's garage, the defendant told Morales that "I don't want nothing to do with it," and "[d]rop me off at my mother's or at a bar." According to the defendant, the three men then left the garage, and on route to the bar, Morales killed the victim.

In discussing a person's abandonment of a joint enterprise so as to avoid guilt for a subsequent crime, we have said that "there must be at least an appreciable interval between the alleged termination and the fatal shooting, a detachment from the enterprise before the shooting has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it." *Commonwealth* v. *Green,* 302 Mass. 547, 555 (1939). See *Commonwealth* v. *Graves,* 363 Mass. 863, 866-867 (1973); *Commonwealth* v. *Joyce,* 18 Mass. App. Ct. 417, 428-429 (1984).[7]

The fact that the defendant argued that he never entered into a joint venture does not bar him from arguing, alternatively, that the evidence raised a jury question whether he had withdrawn from the joint venture appreciably before the crimes were committed and that Morales had notice of that detachment. The evidence did raise a jury question whether the defendant had abandoned the plan to assault and rob the victim. Thus a charge on withdrawal or abandonment was required.

3. At any retrial of the defendant, several other issues argued by the defendant may arise again. (a) There was evidence that would have warranted a finding that the defendant was intoxi-

---

[7] The *Green* case involved an attempted robbery and a fatal shooting in a store. Its language would have to be adjusted to the circumstances of given cases. Similarly, some of the language in other opinions would have to be refocused for use in a jury instruction to make it clear that the Commonwealth has the burden of proving beyond a reasonable doubt the absence of abandonment where the evidence raises a reasonable doubt as to whether the defendant continued to be part of a joint venture.

cated with alcohol at the time of the victim's death. At retrial, the judge's instructions should not foreclose the jury from considering evidence of the defendant's intoxication in deciding ·(i) whether the defendant had a specific intent to steal (as an element of the crimes of robbery [see *Commonwealth* v. *Tevenal,* 401 Mass. 225, 228 n.2 (1987)] and larceny [see *Commonwealth* v. *Schraffa,* 2 Mass. App. Ct. 808, 809 (1974)]); (ii) whether the defendant acted with a conscious disregard for a risk to life (*Commonwealth* v. *Tevenal, supra* at 230-231); and (iii) whether, on any joint venture theory of guilt requiring proof of a shared specific intent with the principal, the defendant had that intent. If requested, the judge should instruct the jury that they may consider evidence of the defendant's intoxication at the time of any alleged specific intent crime in deciding whether the Commonwealth has proved the specific intent element of any crime beyond a reasonable doubt. See *Commonwealth* v. *Henson,* 394 Mass. 584, 593 (1985). (b) There would appear to be no basis, barring new evidence, for further pretrial consideration of the voluntariness of the defendant's statement to the police or of his admission to his friend. The judge considered the matter before trial and on further evidence in deciding the defendant's motion for a new trial. In each instance, he was warranted in concluding that the defendant acted voluntarily. (c) If the evidence at retrial warrants a finding that the defendant was guilty of larceny as a lesser included offense of robbery, instructions would be required on both larceny and on felony-murder in the second degree, coupled with the necessary element that the circumstances must show beyond a reasonable doubt the defendant's conscious disregard of the risk to human life (see *Commonwealth* v. *Moran,* 387 Mass. 644, 651 [1982]). (d) On the evidence in this record, an instruction on manslaughter was not called for.

4. The judgments of conviction are reversed, the verdicts are set aside, and the case is remanded for retrial.

*So ordered.*